**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Justin Wright Mallory, Sr., | ) | Civil Action No. 3:11-03295-MBS |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Travis Holdorf, Stan Smith and | ) | **ORDER AND OPINION** |
| Randy Strange, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Justin Wright Mallory, Sr. ("Plaintiff"), filed this action pursuant to 42 U.S.C. § 1983 against officers of the Richland County Sheriff's Department ("RCSD"), Travis Holdorf ("Holdorf"), Stan Smith ("Smith"), and Randy Strange ("Strange") (collectively, "Defendants"). Plaintiff seeks to recover damages from Defendants for alleged violations of his Fourth, Sixth, Eighth, and Fourteenth Amendment rights, which infringements occurred during the course of his arrest and prosecution for the murder of his wife, Nekia Gibson Mallory ("Plaintiff's wife"), for which Plaintiff was ultimately found not guilty. Plaintiff specifically contends that each Defendant knowingly fabricated evidence against him and concealed exculpatory evidence that caused his arrest and prosecution for the murder.

This matter is before the court on Defendants' motion for summary judgment on all claims asserted against them, which motion was filed on December 20, 2011. (ECF No. 8.) Plaintiff opposes Defendants' motion for summary judgment on grounds that material questions of fact exist as to his right to recover against Defendants. (ECF No. 52.) For the reasons set forth below, the court **GRANTS** Defendants' Fed. R. Civ. P. 56 motion for summary judgment as to Plaintiff's claims.

1

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are discussed below.

In the early morning hours of May 14, 2006 (Mother's Day), Plaintiff's wife was stabbed multiple times inside the apartment home she shared with Plaintiff, which apartment was located at the Hunter's Mill Apartment Complex on 1103 Pinelane Road in Richland County, South Carolina. (ECF No. 1, p. 2.) At approximately 3:30 a.m. on May 14, 2006, Plaintiff arrived home and found his wife unconscious, beaten, bloody, and lying in a pool of blood. (ECF No. 1, p. 2.) At 3:35:04 a.m., Plaintiff called 911 and remained on the phone with them until 3:37:32 a.m. (ECF No. 52-3, p. 2.) Plaintiff then loaded his wife into his white van and drove her to the emergency room at Providence Hospital Northeast ("Providence Hospital") in Richland County. (ECF No. 1, pp. 2-3.) Plaintiff's wife was pronounced dead shortly after arriving at Providence Hospital. (Id. at p. 3.)

At approximately 5:15 a.m. on May 14, 2006, Holdorf, a homicide investigator with the RCSD, arrived at the Providence Hospital and met Plaintiff. (ECF No. 8-8, pp. 6-7.) Plaintiff agreed to accompany Holdorf to RCSD's headquarters in order that Holdorf could document Plaintiff's version of events. (Id.) During their conversation, Plaintiff told Holdorf that he worked on Saturday, May 13, 2006, from 7:30 a.m. until 12:00 p.m.[1] (ECF No. 8-7, p. 3.) Plaintiff went home after work and he and his wife fell asleep on separate couches until about 5:00 p.m. (Id. at p. 4.) Plaintiff then left for a period of time, making stops for food and beverages. (Id.) Upon returning home, Plaintiff drank an alcoholic beverage with his wife and their neighbor, Dawn Kenny. (Id.) Plaintiff then left his wife to meet his paramour, Rikki Cook

---

[1] At his deposition, Plaintiff testified about his conversation with Holdorf at RCSD's headquarters.

("Cook"). (Id. at pp. 4-5.) Plaintiff picked up Cook at her sister's Bush River Road apartment complex, and they went out for a meal, checked into a room at the Economy Inn on Broad River Road, and stayed there until approximately 3:15 a.m. (Id. at pp. 5-6.) Plaintiff then stopped at a convenience store to buy some items, returned Cook to her sister's apartment, and drove home arriving there some time between 3:30 a.m. and 3:40 a.m. (Id. at p. 6.) Upon arrival at his apartment, Plaintiff went to the porch, looked inside the apartment, and observed his wife on the floor lying in a pool of blood. (Id.) Plaintiff discovered the front door unlocked and he proceeded to walk inside the apartment. (Id.) Plaintiff went to his wife, but she was unresponsive. (Id. at p. 7.) Plaintiff then went outside and started beating on neighbors' doors for help, which caused Shaheed Hargraves to come and offer help to Plaintiff. (Id.) Plaintiff then picked up his wife, placed her in his white van, and took her to the hospital. (Id. at p. 9.)

After their initial conversation, Holdorf told Plaintiff that an investigator would need to speak with Cook. (ECF No. 8-2, p. 3.) At approximately 7 a.m., Plaintiff escorted Holdorf and Strange, a sergeant with the RCSD, to the apartment of Cook's sister. (Id.) Strange remained behind to interview Cook while Holdorf and Plaintiff returned to the RCSD's headquarters. (Id.) Strange learned from Cook that Plaintiff had dropped Cook off at her sister's apartment at 3 a.m. or shortly thereafter. (Id. at p. 4; see also ECF No. 8-10, pp. 13-14.) In addition, Strange measured the amount of time it took to travel from Cook's sister's apartment to Plaintiff's apartment, which drive took 19 minutes at a rate of speed of 65 miles per hour. (Id.)

After Plaintiff and Holdorf returned to RCSD's headquarters, Holdorf took a written statement from Plaintiff. (Id. at p. 3.) Plaintiff also agreed to submit to a polygraph examination. (ECF No. 8-7, p. 12.) While waiting for the polygraph examiner, Plaintiff mentioned to Holdorf the names of Porch and "Vince, the maintenance guy" as possible

3

suspects.  (ECF No. 8-2, p. 4.)  Plaintiff proceeded to fail the polygraph test (according to Defendants).  (ECF No. 8-10, p. 18.)

While the investigation was ongoing, Investigator Round ("Round") of the RCSD interviewed a neighbor of Plaintiff named Dennis Tentyon ("Tentyon").  (ECF No. 8-2, p. 5.)  Round learned from Tentyon that he had heard a man's voice yelling for help a few minutes after 3 a.m.  (Id.)  Tentyon further said that he had been with a woman, Sherry Tribble ("Tribble"), who had heard more than he did.  (Id.)  Tentyon said that Tribble heard a woman's voice asking "why" and heard a man's voice a short time later, which voices in combination sounded like a married couple having an argument.  (Id.)  At the time of Round's interview of Tentyon, Tribble was at church.  (Id.)

As the investigation continued to unfold, Holdorf and Strange communicated everything they learned to Smith, the captain of the RCSD's major crime unit, to keep him abreast of the situation.  (ECF No. 8-2, p. 5.)  As he was updated on the status of the investigation by Holdorf and Strange, Smith then consulted with John Meadors, a deputy solicitor with the Richland County Solicitor's Office.  (ECF No. 8-9, p. 9.)  After communicating the facts that had been uncovered by the investigators, Smith was told by Meadors that he believed probable cause existed and authorized Smith to seek an arrest warrant against Plaintiff for murder.  (ECF No. 8-11, pp. 23-24.)

Thereafter, Holdorf communicated to Plaintiff that he was being arrested and charged with his wife's death.  (ECF No. 8-2, p. 5.)

Holdorf prepared a warrant worksheet, which document was used to prepare a warrant affidavit.  (ECF No. 8-8, pp. 13-14.)  Based upon the contents of the arrest warrant affidavit, Richland County Magistrate Judge Kirby D. Shealy, Jr. ("Judge Shealy") determined that

4

probable cause existed for Plaintiff's arrest and issued Arrest Warrant I-977265 against Plaintiff on May 15, 2006. (ECF No. 8-3.) Specifically, Plaintiff's arrest warrant stated that probable cause existed based on the following facts:

> That on 05/14/2006 while at 1103 Pinelane Rd. Apt. 331 C in the Dentsville Magisterial District of Richland County, one Justin Mallory did commit the crime of Murder in that he did with malice and aforethought stab and beat the victim, Nakia Mallory, his wife. Moments before the victim's death a witness heard a female call out from the incident location. The witness observed a subject run from the scene to the defendant's van and get into the van. The defendant has given a written statement that places him at the scene at the time of the incident. RCSD case no. 06051299-14. Affiant and others are witness to prove the same.
> (Id.)

Strange followed up on Plaintiff's suggestion of suspects by meeting with Porch and his wife, Persia ("Porch's wife"). (ECF No. 8-10, p. 20.) After explaining to Porch and his wife why he was there, Strange learned that Porch and his wife knew Plaintiff and his family. (Id. at pp. 20-21) During this meeting, Porch's wife confirmed that Porch was home in the early hours of the morning. (Id. at p. 21.) In addition, Strange observed Porch's body and did not see any scratch marks on his face, neck, or arms. (Id.)

Holdorf eventually made contact with Tribble by way of telephone. (ECF No. 8-2, p. 5.) Tribble stated that she heard a woman ask "why" and "how could you" several times. (Id.) After hearing the woman's voice, Tribble heard a man's voice, but did not understand what he said. (Id.) Tribble then looked outside and saw a white van parked in front of the apartment building across from her. (Id.) Tribble eventually heard the man's voice again and understood him to say, "look what you made me do" and "look what you did." (Id.) Tribble again looked outside and observed that the white van had been moved and its doors were open. (Id.) Tribble saw a man run to the van, get in, and drive off. (Id.) Tribble agreed to come to the RCSD's headquarters on May 16, 2006 and provide a statement. (Id.)

Plaintiff was tried twice in the Richland County Court of General Sessions for the murder of his wife. The first trial in July 2007 resulted in a hung jury and mistrial. (ECF No. 1, p. 4.) At the first trial, Porch provided testimony that he was present at the moment Plaintiff stabbed his wife. (ECF No. 52-19, pp. 6-8.) The second trial in December 2008 resulted in the trial judge acquitting Plaintiff of the murder charge. (Id.) After Plaintiff's second trial, the RCSD opened a new investigation, which resulted in Porch being arrested and charged with the murder of Plaintiff's wife. (Id.) Porch is presently awaiting trial on this charge. (Id.)

On December 2, 2011, Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging violations of his civil rights protected by the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of South Carolina.[2] (ECF No. 1.) Plaintiff specifically alleged claims of false arrest, malicious prosecution, and due process violations. (Id.)

Defendants answered the complaint denying Plaintiff's claims on December 20, 2011. (ECF No. 7.) Also, on December 20, 2011, Defendants filed a motion for summary judgment, which motion was filed before any discovery had been conducted.[3] (ECF No. 8.) Plaintiff filed opposition to Defendants' motion for summary judgment on August 3, 2012, to which Defendants filed a reply in support of summary judgment on August 27, 2012. (ECF Nos. 52, 62.)

---

[2] Plaintiff also has a state action pending against Defendants and others for state law claims including malicious prosecution, false arrest, abuse of process, negligence, intentional infliction of emotional distress, defamation, civil conspiracy to commit fraud, and wrongful death, arising out of the underlying incident.

[3] In his state action, Plaintiff had the opportunity to depose Holdorf and Smith. After these depositions, Plaintiff interviewed Porch's wife, who provided a statement that Defendants "coached" her husband as to his testimony against Plaintiff. Plaintiff did not have a chance to question Defendants about these new allegations, because the state action was stayed pending the completion of the criminal trial against Porch for the murder of Plaintiff's wife.

## II.     LEGAL STANDARD AND ANALYSIS

**A.**     **Standard**

    1.     Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not

based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

    2.    Claims pursuant to 42 U.S.C. § 1983

42 U.S.C. § 1983 is the vehicle by which individuals make legal claims for violations of their federal rights. See Kendall v. City of Chesapeake, 174 F.3d 437, 440 (4th Cir. 1999). To establish a cause of action under § 1983, a plaintiff must allege: (1) the violation of a right protected by the Constitution or laws of the United States, and (2) that the defendant was acting under color of law.[4] Parratt v. Taylor, 451 U.S. 527, 535 (1981). When an unreasonable seizure, arrest or prosecution is alleged, such a claim is governed by the Fourth Amendment. Brooks v. City of Winston–Salem, 85 F.3d 178, 183 (4th Cir. 1996).

    *a.    False Arrest or False Imprisonment*

To establish a Fourth Amendment false arrest or malicious prosecution claim, the plaintiff must establish that probable cause did not exist for his arrest. Id. Probable cause is defined as facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed an offense. Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). If probable cause existed for the plaintiff's charges, then the Fourth Amendment claim must fail. Probable cause exists when "facts and circumstances . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing,

---

[4] 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

8

or is about to commit an offense." Porterfield, 156 F.3d at 568 (quotations omitted). Probable cause requires more than "bare suspicion" but requires less than evidence necessary to convict. Id. "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." Id. And when it is considered in the light of all of the surrounding circumstances, even "seemingly innocent activity" may provide a basis for finding probable cause. Id. Finally, at the time of the arrest, police officers need probable cause that a crime has been committed, not that the criminal defendant committed all of the crimes for which he is later charged. Wilkerson v. Hester, 114 F. Supp. 2d 446 (W.D.N.C. 2000).

A claim that a warrantless arrest is not supported by probable cause constitutes a claim of false arrest or false imprisonment. Id. at p. 181. To establish a § 1983 claim based on a Fourth Amendment violation for false arrest or imprisonment, a plaintiff must show that the seizure was effected without probable cause. See Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001); see also Brooks, 85 F.3d at 183. Thus, there is no § 1983 claim for false arrest unless the officer lacked probable cause. Street v. Surdyka, 492 F.2d 368, 372–73 (4th Cir. 1974). Therefore, a warrantless arrest is valid if the arresting officer has probable cause to believe the suspect has committed an offense, and the officer's decision that probable cause is present is reviewed under a totality of the circumstances test. See Illinois v. Gates, 462 U.S. 213, 238 (1983).

        *b.*     *Malicious Prosecution*

To prevail on a Fourth Amendment malicious prosecution claim under § 1983, a plaintiff must show that: (1) the defendant initiated or maintained a criminal proceeding; (2) the criminal proceeding terminated in the plaintiff's favor; (3) the proceeding was not supported by probable cause; and (4) the plaintiff suffered deprivation of liberty consistent with the concept of seizure

9

as a consequence of a legal proceeding.  See Lambert v. Williams, 223 F.3d 257, 260–262 (4th Cir. 2000) (observing that a "malicious prosecution" claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates the common law malicious prosecution tort elements except for malice); Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998).

### *c.    Due Process*

The Fourteenth Amendment to the United States Constitution provides in part that no State may "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  The Supreme Court has recognized there are three types of claims that may be brought in a § 1983 action alleging violations of the Due Process Clause.  First, the Due Process Clause incorporates many of the specific protections defined in the Bill of Rights. Zinermon v. Burch, 494 U.S. 113, 125 (1990).  A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures.  Id.  Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them."  Id. (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)) The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure.  Id.

### 3.    Qualified Immunity

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818.  Thus,

determining whether an official is entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence." Parrish v. Cleveland, 372 F.3d 294, 301-02 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 200 (2001)). As a threshold matter, the court must determine whether, taken in the light most favorable to Plaintiff, the facts alleged show that the conduct of the defendant violated a constitutional right. Id. If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and Plaintiff cannot prevail. Id. If the facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. Id. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." Id. "If the right was not clearly established in the 'specific context of the case' - that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted' - then the law affords immunity from suit." Id. (quoting Saucier, 533 U.S. at 201).

**B.    Analysis**

      1.    Probable Cause to Arrest Plaintiff

Defendants assert that the reasonable conclusions of their investigation established probable cause to support the arrest of Plaintiff for the murder of his wife. (ECF No. 8-1, p. 13.) First, Plaintiff had sufficient opportunity to commit the murder. (Id. at p. 15.) Defendants assert that based on their timeline of events, Plaintiff had plenty of time to drop Cook off at approximately 3 a.m., drive 19 minutes home, partake in an explosive altercation with his wife, commit the murder at approximately 3:30 a.m., and call 911 at about 3:35 a.m. (Id.) Second, there were no signs of forced entry at the crime scene, which fact suggests that the assailant possessed a level of access and familiarity with the apartment home similar to what Plaintiff had.

11

(Id. at p. 17.)  Third, Plaintiff was further incriminated by Tribble's account, which included hearing a domestic argument between a man and a woman, seeing Plaintiff's van, and watching a male individual enter Plaintiff's van and drive off.  (Id. at p. 14.)  Fourth, Plaintiff lacked credibility with Defendants in the early stages of the investigation after (1) Plaintiff professed to having a "perfect" marriage while engaging in an affair that required lying to both his wife and his girlfriend and (2) he failed a polygraph examination.  (Id. at pp. 16-17.)

Defendants further assert that post-investigation events support the existence of probable cause.  First, probable cause for Plaintiff's arrest is supported by the existence of a facially valid arrest warrant issued by a neutral and detached judge.  (ECF No. 8-1, pp. 18-19 (citing Brooks and Porterfield).  Second, Defendants assert that probable cause is supported by the magistrate judge's bounding Plaintiff's murder charge to the Court of General Sessions after the preliminary hearing was conducted and the purpose of a preliminary hearing is to establish that probable cause exists to continue the criminal process.  (ECF No. 8-1, p. 19 (citing State v. Cunningham, 268 S.E.2d 289 (S.C. 1980).  Third, Defendants relied on a pre-arrest legal opinion from Meadors that probable cause existed.  Meadors also so believed in the finding of probable cause that the Richland County Solicitor's Office prosecuted Plaintiff and continued to prosecute Plaintiff even after the first mistrial.  (Id. at pp. 19-20.)  Fourth, Defendants assert that probable cause to arrest Plaintiff is established by the Grand Jury of Richland County returning a True Billed Indictment, 2006-GS-40-4607.  (Id. at p. 21.)  In this regard, Defendants argue that "[w]here the Grand Jury has returned a true bill upon the charge made, such finding amounts to a judicial recognition that probable cause does exist and infers prima facie probable cause for the prosecution."  (Id. at p. 22 (citing White v. Coleman, 277 F. Supp. 292, 297 (D.S.C. 1967).)  Finally, Defendants contend that probable cause existed because the trial judges in Plaintiff's

12

two criminal trials in the Richland County Court of General Sessions denied multiple motions by Plaintiff for directed verdict. (Id. at pp. 23-24.)

In his opposition to Defendants' motion for summary judgment, Plaintiff contends that it is undisputed that each Defendant acted under color of state law and that material questions of fact exist as to whether each Defendant violated Plaintiff's Fourth Amendment rights. (ECF No. 52, p. 18.) Plaintiff specifically contends that his Fourth Amendment rights were violated when he was arrested at 11 a.m. on May 14, 2006, without a warrant and without probable cause to support the arrest. (Id. at p. 19.) Plaintiff asserts that prior to his warrantless arrest, the false allegation that he failed his polygraph examination was the only evidence that Plaintiff killed his wife. (Id. at p. 21.) Therefore, Plaintiff argues that Defendants lacked probable cause to arrest him at 11 a.m. on May 14, 2006, and, as a result, Defendants violated his Fourth Amendment rights. (Id. at p. 22.)

Even assuming that Defendants subsequently developed evidence that would justify his arrest and imprisonment, Plaintiff contends that material questions of fact exist as to when a lawful arrest could have been made. (Id.) In this regard, Plaintiff argues that the judge's finding at the preliminary hearing, the grand jury indictments, and the denial of directed verdict motions by the two trial judges are no defense to the wrongful arrest and false imprisonment before the police developed probable cause to arrest Plaintiff. (Id.) Plaintiff further argues that Defendants only had mere suspicion at best that Plaintiff might be his wife's murderer and that is not enough to establish probable cause. (Id. at p. 23 (citing Gomez v. Atkins, 296 F.2d 253, 262 (4th Cir. 2002)).)

Plaintiff also asserts that Defendants' lack of probable cause for Plaintiff's warrantless arrest was not cured after Defendants obtained an arrest warrant from Judge Shealy. (ECF No.

52, p. 24.)  Plaintiff argues that the warrant affidavit is defective on its face because (1) Holdorf did not sign the warrant affidavit although he is the affiant; (2) there is no evidence that the officer who signed for Holdorf was duly sworn; (3) the warrant affidavit does not contain a notary stamp; and (4) the signer's name is illegible.  (Id.)  Plaintiff further asserts that the warrant affidavit contains false statements and omits material statements.  (Id.)  Plaintiff argues as follows:

> First, if Nekia Mallory was murdered at 3:30 a.m. as Holdorf speculated, there was no witness who heard a female call out "moments before the victim's death." To the contrary, Sherry Tribble told Holdorf that she only heard a female voice the first time she heard voices outside her window.  When the argument ended, there was a 30 to 45 minute period of silence before she heard a male voice.  If the witness heard a female voice "moments before the victim's death," the death must have occurred between 2:45 a.m. and 3:00 a.m.  But Holdorf knew from the Rikki Cook interview that Mr. Mallory had dropped Ms. Cook off at 3 a.m., or shortly after, and that Mr. Mallory claimed he dropped Ms. Cook off at 3:15 a.m. Hence Mr. Mallory could not have been home to commit the murder at this time. Holdorf thus intentionally omitted all references to the 30 to 45 minute gap and thereby disregarded readily available exculpatory evidence to create probable cause.
>
> Second, Mallory's written statement did not remotely place him at the "scene of the incident" at the same time Ms. Tribble heard the domestic argument and later saw the male run to the van. In the statement, Mr. Mallory estimated that he stayed with Ms. Cook at the Economy Inn motel until 3:15 am. He then "dropped Rickie off at her sister's apartment and went home." If it took 19 minutes to drive this distance as Strange concluded, Mallory's written statement would put him home well past the time Tribble saw the person drive off in the van.

(Id. at p. 25.)

As a result of the misrepresentations in the warrant affidavit, Plaintiff argues that the arrest warrant issued by Judge Shealy was tainted with incorrect information.  (ECF No. 52, p. 34.)  Plaintiff then extrapolates that every event after the issuance of the warrant affidavit was tainted including his bond hearing, the Grand Jury Indictment, and court rulings through his acquittal.  (Id. at pp. 35-36.)

14

### 2. Qualified Immunity

Defendants argue they are entitled to qualified immunity because they did not violate Plaintiff's Fourth Amendment rights since there was probable cause to support his arrest. (Id. at p. 26.) In this regard, Defendants contend they are entitled to immunity because Smith conferred with a prosecutor, Meadors, before the warrant was issued; Meadors opined to Defendants that probable cause existed for Plaintiff's arrest; and a neutral and detached magistrate judge, Shealy, issued the arrest warrant. (ECF No. 8-1, pp. 26-29 (citing Wadkins v. Arnold, 214 F.3d 535 (4th Cir. 2000)[5]; Gomez v. Atkins, 296 F.3d 253 (4th Cir. 2002)).)

Defendants further contend that the unconstitutionality of their conduct was not clearly established such that a reasonable police officer in their positions would have known that their conduct was unlawful. (ECF No. 8-1, p. 31.) In this regard, Defendants state that an objectively reasonable police officer in any one of their positions would have formed the good faith belief that Plaintiff killed his wife, in light of the following variables:

> (1) the gripping version of events as communicated by Tribble, a credible witness, would have provided at a minimum, a basis in fact that Plaintiff was involved in his wife's murder; (2) the distinctive modus operandi of a domestic homicide perpetrator in light of the husband just having sexual intercourse with another woman and the volatile nature of the altercation that ensued; (3) the husband's seeming resentment toward his wife, all the while describing his marriage as "perfect" and failing the polygraph; (4) his ability or opportunity to commit the crime as law enforcement develops a realistic timeline; and finally, (5) the bloody crime scene wherein it appears that the perpetrator did not force entry and then ostensibly made some attempt to clean up.

(Id.) Moreover, an objectively reasonable police officer would have believed that he could rely on the judgment of a veteran prosecutor in addition to a county magistrate, who both concluded

---

[5] In Wadkins, the Fourth Circuit Court of Appeals found that the fact that the officer consulted with a prosecutor prior to obtaining an arrest warrant supported his qualified immunity defense. The Court explained that "Detective Arnold's conference with the Commonwealth's Attorney and the subsequent issuance of the warrants by a neutral and detached magistrate weigh heavily toward a finding that Detective Arnold is immune." Wadkins, 214 F.3d at 541.

that probable cause existed.  (Id.)  Defendants assert that their defense compares favorably to the Gomez case where the Fourth Circuit found that "to the extent that Atkins discounted Isidro's alibi or interpreted certain evidence, our review must assess whether, in so doing, he acted in an objectively reasonable manner, i.e., whether an objective officer could have reasonably believed there was probable cause for an arrest."  (ECF No. 62, p. 29 (citing Gomez v. Atkins, 296 F.2d 253, 261 (4th Cir. 2002)).)

Plaintiff contends that Defendants have conceded that at the time of Plaintiff's arrest, the right to be free of arrest without probable cause was clearly established.  (ECF No. 52, p. 42 (citing ECF No. 8-1, p. 13).)  As a result, Plaintiff argues that summary judgment should not be granted on qualified immunity grounds because the affidavit of arrest was so totally lacking in indicia of probable cause and so contrary to the actual evidence the police had obtained at the time that no objective law enforcement officer would have concluded that probable cause existed for Plaintiff's arrest.  (Id. at p. 42.)

    3.  Evidence of Other Constitutional Violations

Defendants assert that the record is devoid of evidence to support alleged violations of Plaintiff's Sixth, Eight, and Fourteenth Amendment rights.  (ECF No. 8-1, pp. 32-34.)

Defendants contend the Eighth Amendment does not apply to Plaintiff's claims and Fourteenth Amendment claims are not cognizable in the Fourth Amendment context.  (Id.)

Plaintiff contends that his due process rights were violated by his improper seizure without a warrant or probable cause and the issuance of an arrest warrant without probable cause.  (ECF No. 52, p. 38.)  Plaintiff makes an additional due process argument that Defendants fabricated evidence through the testimony of Tribble and Porch.  (Id.)  As support for this third claim, Plaintiff submitted statements from Porch's wife, which statements Plaintiff contends

support the conclusion that Defendants induced Porch to give false testimony. (Id.) Plaintiff specifically cited to the following comments from Porch's wife:

> Joshua told me that he was told it would make more sense to say that he and Nekia were fooling around, so he agreed to put that in his statement. I do not know which officer told him that but the two main officers who were talking were Holdorf and Smith. When I was asked in an earlier statement if Joshua had ever admitted to me that he had lied to the police, I said he made it sound like a lie that was understood because he told me hey were leading him to say things that were not true, therefore they understood it was a lie. (ECF No. 52-17, p. 2.)
>
> Q: Regarding the interview at the Sherriff's department before Joshua's arrest, could you explain what Joshua told you about the kissing and fondling between him and Nakia?
>
> A: Joshua told me he was lying but the Sheriff's Department knew. He told me he only said this because the Sherriffs's Department said it would make more sense if they were making out, and they encouraged him to tell the lie. (ECF No. 52-18, pp. 2-3.)

Plaintiff argues that the statements of Porch's wife are not hearsay, but are evidence showing that Defendants induced Porch to fabricate a story to support Plaintiff's prosecution in violation of his due rights.

    4.    <u>Statute of Limitations</u>

Defendants assert that a three year statute of limitations is applicable to § 1983 claims in federal court. (ECF No. 8-1, p. 34 (citing <u>Huffman v. Tuten</u>, 446 F. Supp. 2d 455, 459-460 (D.S.C. 2006) (referencing S.C. Code Ann. § 15-3-535).) Defendant further asserts that Plaintiff had three years from the discovery of his constitutional deprivations in 2006 or 2007 to file his complaint. (Id. at p. 35.) Because Plaintiff did not file his complaint until December 20, 2011, Defendants argue Plaintiff failed to file suit within the applicable statute of limitations. (Id.)

Plaintiff contends that the statute of limitations for a malicious prosecution claim begins to run from the date of a favorable termination, such as an acquittal on charges. (ECF No. 52, p.

17

43 (citing Lambert v. Williams, 223 F.3d 257, 262 n. 3 (4th Cir. 2000) (the significance of the favorable termination element is not only that it constitutes a prerequisite for recovery, but also that it establishes the time from which the claim accrues for purposes of determining whether the statute of limitations has run)).) In this regard, Plaintiff asserts that he was acquitted on December 5, 2008, and his complaint was filed on December 2, 2011, less than three years later. (Id.) Therefore, Plaintiff argues his complaint was timely filed. (Id.)

    5.    The Court's Review

Plaintiff's § 1983 claims are based on the premise that Defendants violated his constitutional rights because they lacked probable cause at the time to arrest him for the murder of his wife. In this case, the right to be arrested only on probable cause is clearly established. See Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007) ("Unquestionably, [t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable."); see also Smith v. Reddy, 101 F.3d 351, 356 (4th Cir. 1996). Therefore, in the context of Plaintiff's arrest, Defendants are entitled to summary judgment and/or qualified immunity if a reasonable officer in Defendants' position could have reasonably believed that probable cause existed to make a warrantless arrest. See Devenpeck v. Alford, 543 U.S. 146, 152 (2004) ("a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."); Malley v. Briggs, 475 U.S. 335, 344-45 (1986) ("[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.") (citations omitted). To make this determination, the court must find that the information within Defendants' knowledge at the time of Plaintiff's arrest justified a reasonable belief that Plaintiff

18

probably caused the death of his wife.

Upon review, the court does not agree with Defendants that this case compares favorably to the Gomez case. Nevertheless, the court is persuaded by the evidence of record that at the moment of Plaintiff's arrest and under the facts and circumstances known to Defendants at the time, a reasonable law enforcement officer would have believed that there was a probability that Plaintiff was responsible for the murder of his wife. Thus, Defendants satisfy the relatively low threshold required by the Fourth Amendment that probable cause existed regarding Plaintiff's arrest. Moreover, because probable cause existed to arrest Plaintiff, Defendants did not violate Plaintiff's constitutional rights. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims for false arrest, malicious prosecution, and violation of due process rights under § 1983.[6]

Furthermore, without evidence of a constitutional violation, the court is not required to determine whether any rights Plaintiff has asserted were "clearly established" for purposes of qualified immunity. See DiMeglio v. Haines, 45 F.3d 790, 799 (4th Cir. 1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir. 1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established."). As such, Defendants

---

[6] In as much as Plaintiff attempts to claim violation of substantive due process, the Supreme Court has ruled that an individual alleging that he was prosecuted in the absence of probable cause states no substantive due process claim, but instead the claim must be brought under the Fourth Amendment. Albright v. Oliver, 510 U.S. 266, 275 (1994).

are also entitled to summary judgment on their affirmative defense of qualified immunity.[7]

### III.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** Defendants' motion for summary judgment with respect to Plaintiff's claims pursuant to 42 U.S.C. § 1983. (ECF No. 8.)

**IT IS SO ORDERED**.

/s/Margaret B. Seymour
MARGARET B. SEYMOUR
CHIEF UNITED STATES DISTRICT JUDGE

September 28, 2012
Columbia, South Carolina

---

[7] As this court finds that Defendants are entitled to summary judgment, it is unnecessary to address their statute of limitations argument.

20